IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **METRO SPECIAL POLICE & SECURITY** ) <br> **SERVICES, INC.,** ) <br> ) <br> **Defendant.** ) <br> ) | CIVIL ACTION NO.: <br> 3:13-CV-39 <br><br><br><br> COMPLAINT <br><br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to James Pedersen ("Pedersen"), Eric Steele ("Steele"), Daniel Griffis ("Griffis"), and a class of similarly situated male employees who were adversely affected by such practices. As alleged with greater particularity below, the U.S Equal Employment Opportunity Commission (the "Commission") alleges that Defendant, Metro Special Police & Security Services, Inc., subjected Pedersen, Steele, Griffis and a class of similarly situated male employees to sexual harassment because of sex, male. The Commission also alleges that Defendant suspended and discharged Steele in retaliation for complaining about the sexual harassment, and disciplined, demoted and/or discharged a class of similarly situated male employees for complaining about the sexual harassment.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

1

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina, Charlotte Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a North Carolina corporation doing business in the state of North Carolina and the city of Charlotte, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Pedersen, Steele and Griffis each filed charges with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. <u>Pedersen – Sexual Harassment</u>. Since at least October 2010, Defendant has engaged in unlawful employment practices at its Charlotte, North Carolina operations in

violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), by subjecting Pedersen to sexual harassment because of his sex, male.

  a. Defendant hired Pedersen as a Security Officer on or about October 29, 2010. During his employment, Pedersen was subjected to offensive sexual remarks by one of Defendant's Captain's who was Pedersen's second line supervisor (hereinafter "the Captain"). The Captain had immediate and/or successively higher authority over Pedersen. More particularly:

  b. On or about October 30, 2010, the Captain asked Pedersen if he would undress in front of him while putting on his uniform. Pedersen said "[n]o," but the Captain refused to leave the changing room and stood in the corner with his back to Pedersen.

  c. Later that same day, the Captain handed Pedersen a note asking him to text him two pictures of himself – one of Pedersen in his uniform, and one of his choice. Pedersen believed this was a solicitation from the Captain for a sexually provocative picture. Pedersen did not send any pictures to the Captain.

  d. Throughout Pedersen's employment, the Captain often told Pedersen "[y]ou look good in your uniform," and would refer to Pedersen as "Big Sexy" every time he saw Pedersen.

  e. On one occasion, the Captain approached Pedersen to fix his badge. While doing so, the Captain reached inside Pedersen's shirt and caressed his chest.

  f. On another occasion, the Captain asked Pedersen, "[a]re you gay or straight?" and told Pedersen that it was "better for men to stay single and masturbate as opposed to getting married."

3

g. The Captain continually sent text messages to Pedersen asking if he could warm his hands by placing them in Pedersen's pockets. The Captain also sent Pedersen text messages asking Pedersen to meet him in hotel rooms when traveling on assignment.

h. Pedersen continually asked the Captain to stop making sexual comments to him and to stop sending him text messages. However, the Captain did not stop. On or about November 11, 2010, Pedersen complained to his direct supervisor about the Captain's inappropriate sexual conduct. Pedersen's supervisor later told Pedersen he spoke with the Captain about Pedersen's complaints. But, the harassment did not stop.

i. Pedersen was subjected to sexual harassment because of his sex, male, in the form of unwelcomed touching, comments, and text messages by a supervisor. The harassment was severe or pervasive and altered the terms and conditions of Pedersen's employment. Pedersen complained about the harassment to his direct supervisor, and told the Captain directly that he was uncomfortable with his conduct, that it was unwelcome, and asked that it stop. In spite of Pedersen's complaints, and requests for the harassment to stop, it did not stop. As such, Defendant failed to prevent and promptly correct the harassment.

j. On November 12, 2010, Pedersen resigned his employment with Defendant because Defendant failed to prevent and promptly correct the sexual harassment.

8. <u>Steele – Sexual Harassment and Retaliation</u>. Since at least November 2010, Defendant has engaged in unlawful employment practices at its Charlotte, North Carolina operations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1); and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by subjecting Steele to sexual harassment because of

his sex, male, and for suspending and discharging Steele because he complained about the harassment.

    a.    Steele was hired by Defendant on January 28, 2010 as a Patrol Officer.

    b.    The Captain had immediate and/or successively higher authority over Steele.

    c.    In November 2010, the Captain caressed Steele's arm and said "[n]ice." Steele told the Captain not to touch him again.

    c.    In December 2010, the Captain approached Steele and rubbed his chest. Steele told the Captain to stop. The Captain responded something to the effect of "[o]h you know you like it," and that he "was just playing."

    d.    Also, in December 2010, Steele complained about the Captain's sexual harassment to his direct supervisor. Based on information and belief, Steele's supervisor was already aware of a similar complaint against the Captain raised by Pedersen. The supervisor told Steele he would take his complaint up the chain of command and get back with him. About a week later, Steele asked his supervisor about the status of his complaint, and his supervisor replied "nothing."

    e.    On or about December 11, 2010, Steele complained about the Captain's harassment to Defendant's Chief of Police.

    f.    On or about December 29, 2010, Steele met with Defendant's Owner/CEO regarding his sexual harassment complaint against the Captain. Based on information and belief, persons present at the meeting were Steele, Defendant's Owner/CEO, Defendant's Human Resources Specialist, Defendant's Business Office Manager and the Captain. During the meeting, the Owner/CEO allowed the Captain to

confront Steele about the allegations against the Captain. After the meeting, the Owner/CEO told Steele he did not believe him.

      g.      The same day, on or about December 29, 2010, immediately after the aforementioned meeting, the Captain suspended Steele for three shifts. When Steele asked his supervisor why he was being suspended, his supervisor said the Captain wanted Steele to go home and that he was not needed.

      h.      Steele complained to Defendant's Chief of Police about being suspended, and told the Chief of Police that he thought it was in retaliation for his sexual harassment complaint. The Chief of Police forwarded Steele's complaint to Defendant's Owner/CEO who responded something to the effect that he will not tolerate anyone "making accusations or allegations" that are not warranted. Defendant's Owner/CEO described Steele's sexual harassment complaint as an attempt to "discredit another employee."

      i.      Defendant retaliated against Steele by terminating his employment. Specifically, Steele filed an EEOC Charge of Discrimination on January 13, 2011. Defendant received a copy of the Notice of Charge of Discrimination on or about January 19, 2011. Defendant terminated Steele on January 25, 2011, in retaliation for complaining about sexual harassment and for filing an EEOC Charge.

      j.      Steele was subjected to sexual harassment because of his sex, male, in the form of unwelcomed touching and comments by a supervisor. The harassment was severe or pervasive and altered the terms and conditions of Steele's employment. Steele complained about the harassment to his direct supervisor, and to Defendant's Chief of Police. Steele also informed the Captain directly that he was uncomfortable with his

conduct, that it was unwelcome, and asked that it stop. In response to Steele's complaints, he was told by Defendant's Owner/CEO that he did not believe Steele. In response to his complaints of harassment, Defendant terminated Steele. As such, Defendant failed to prevent and promptly correct the harassment, and retaliated against Steele for engaging in protected activity.

9. <u>Griffis – Sexual Harassment.</u> Since at least February 2011, Defendant has engaged in unlawful employment practices at its Charlotte, North Carolina operations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1), by subjecting Griffis to sexual harassment because of his sex, male.

    a. Griffis was hired by Defendant as a Security Officer in January 2011. Shortly thereafter, Griffis was subjected to sexual harassment by the Captain, and one of Defendant's Lieutenants (hereinafter "the Lieutenant"). The Captain had immediate and/or successively higher authority over Griffis.

    b. In February 2011, the Lieutenant asked Griffis if he "swings both ways," which Griffis believed was a question regarding having sex with males and females. In response, Griffis answered "no."

    c. In March 2011, at least six (6) times, the Captain pinned Griffis against a patrol car, unzipped and/or attempted to unzip Griffis' pants and rubbed Griffis' penis outside his underwear.

    d. In or about April or May, 2011, the Captain took Griffis, the Lieutenant and another officer to a gay strip club. The Captain instructed the employees to turn their shirts inside out and turn in their firearms. The Captain told Griffis they were doing some "undercover" work. However, the Captain then paid for a lap dance by a male

stripper for Griffis. Griffis asked the stripper to stop. The Captain then grabbed the stripper's arm and moved him from Griffis to the Lieutenant. After this incident, the Captain invited Griffis back to the strip club several times, but each time Griffis declined.

e. The Captain frequently stayed in hotel rooms and would ask Griffis to come by the hotel room before work to "hang out." Griffis always declined.

f. On one occasion, while returning from an assignment with the Captain, the Lieutenant and another officer, Griffis fell asleep in the patrol car. Griffis was awakened to the Captain grabbing Griffis' genitals and saying something to the effect of "[o]ooo, you have morning wood."

g. Griffis continuously asked the Captain to stop his offensive conduct. When Griffis rejected the Captain's sexual advances, the Captain would tell Griffis "[y]ou lost brownie points in my book." The Captain also told Griffis that he had the Owner/CEO "in his back pocket, and he won't believe anything you say." Griffis began avoiding the Captain and the Lieutenant in May 2011. Shortly thereafter, Griffis was transferred from working sites near his residence to locations that required him to drive anywhere from 30 minutes to two hours at night - one way.

h. In June 2011, Griffis was called into the office by the Owner/CEO and questioned about the Captain's and the Lieutenant's conduct. During the meeting, the Owner/CEO told Griffis he knew sexual harassment allegations had been made against the Captain at previous employers, and he admitted that he had terminated the Captain once before for similar allegations, but later rehired him. At the close of the meeting, the Owner/CEO required Griffis to sign a confidentiality agreement, and told Griffis not to discuss the matter with anyone.

i. Griffis was subjected to sexual harassment because of his sex, male, in the form of unwelcomed touching and comments by a supervisor. The harassment was severe or pervasive and altered the terms and conditions of Griffis' employment. Griffis told the Captain directly that he was uncomfortable with his conduct, that it was unwelcome, and asked that it stop. Griffis also complained to Defendant's Owner/CEO about the offensive conduct of the Captain and the Lieutenant. In response to Griffis' complaints, he was told by Defendant's Owner/CEO to not discuss the matter with anyone, and required Griffis to sign a confidentiality agreement. As such, Defendant failed to prevent and promptly correct the harassment.

10. <u>Other aggrieved individuals.</u> Since at least October 2010, Defendant has engaged in unlawful employment practices at its Charlotte, North Carolina operations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1); and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by subjecting a class of similarly situated male employees to sexual harassment because of their sex, male, and suspending, demoting and/or terminating a class of similarly situated male employees for complaining about and/or opposing the sexual harassment.

11. The harassment was committed by the Captain or the Lieutenant. The Captain or Lieutenant had immediate and/or successively higher authority over the class members. The sexual harassment toward class members was severe or pervasive and included, but was not limited to, physical touching by the Captain; text messages from the Captain telling male employees they looked sexy in their uniforms; the Captain routinely hitting male employees in the groin and/or genitals with his hand or clipboard; the Captain making comments to male employees suggesting he could obtain promotions for them in exchange for oral sex and lewd pictures; the Captain asking male employees to lift up their shirts and expose their chests; the

9

Captain and Lieutenant soliciting sexual acts from male employees while staying in hotels while on business assignments; the Captain and Lieutenant attempting to caress the chests of male employees; the Captain routinely whispering in the ears of male employees and asking if he could check to see if the officers were wearing "tactical underwear;" the Captain sending text messages to male employees asking them to send pictures of their genitals, or pictures of them in their underwear; the Captain asking male employees to accompany him to gay strip clubs; the Captain giving officers notes stating they looked good or sexy in their uniforms; the Captain asking male employees if they would consider having sex with men; and the Captain telling male employees he had dreams about them.

12. Some class members complained about the sexual harassment and were disciplined, demoted and/or discharged in retaliation for their complaints.

13. Defendant received complaints about the sexual harassment perpetrated by the Captain and Lieutenant, and was aware of their offensive conduct, and failed to prevent and promptly correct the harassment.

14. The effect of the practices complained of above has been to deprive Pedersen, Steele, Griffis, and other similarly situated male employees of equal employment opportunities and otherwise adversely affect their status as employees based on their sex, male, and to deprive Steele and other similarly situated employees of equal employment opportunities and otherwise adversely affect their status as employees because of their opposition to and complaints of practices made unlawful under Title VII.

15. The unlawful employment practices complained of above were intentional.

16. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Pedersen, Steele, Griffis and other similarly situated male employees because of their sex, male.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practices which discriminate on the basis of sex, and from retaliating against employees who oppose and/or complain about practices made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for men, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Steele, and other similarly situated male employees, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above, including but not limited to reinstatement or front pay.

D. Order Defendant to make whole Pedersen, Steele, Griffis, and other similarly situated male employees, by providing them compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, relocation expenses and job search expenses, in amounts to be determined at trial.

E. Order Defendant to make Pedersen, Steele, Griffis, and other similarly situated male employees whole by providing compensation for past and future non-pecuniary losses

resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

    F.    Order Defendant to pay Pedersen, Steele, Griffis and other similarly situated male employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 22nd day of January, 2013.

    Respectfully submitted,

    EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

    P. DAVID LOPEZ
    General Counsel

    JAMES L. LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel
    Equal Employment Opportunity Commission
    131 M Street, NE
    Washington, D.C. 20507

    s/ Lynette A. Barnes
    LYNETTE A. BARNES (NC Bar 19732)
    Regional Attorney

s/ Tina Burnside
TINA BURNSIDE(WI Bar #1026965)
Supervisory Trial Attorney

s/ Randall D. Huggins
RANDALL D. HUGGINS (OK Bar 17875)
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, NC 28202
Telephone: 704.954.6470
Facsimile: 704.954.6412
Email: randall.huggins@eeoc.gov


**ATTORNEYS FOR PLAINTIFF**